UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LOU ANN LOWENSTEIN,

    Plaintiff,

    v.

SEARS ROEBUCK AND COMPANY,

    Defendant.

_____/

No. C 08-3237 PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is defendant's motion for summary judgment. Plaintiff filed no opposition to the motion. Having read defendant's papers, and carefully considered its arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.

**BACKGROUND**

This is an employment discrimination case filed by plaintiff Lou Ann Lowenstein against defendant Sears, Roebuck and Company ("Sears"). Sears is a retailer of consumer goods, including appliances, hardware, electronics, and home goods, with retail stores nationwide. Plaintiff initially began working for Sears in 1985 as a cashier, and later became a full-time hourly associate. During the time period relevant to this case, plaintiff worked as a Merchandising and Customer Assistance Associate ("MCA") in the Softlines Department, which includes children's apparel, intimate apparel, and luggage. She was employed at the Sears store located at the Hillside Mall in San Mateo, California.

Plaintiff was born with Turner Syndrome, a condition caused by a partial or complete absence of a particular chromosome, resulting in a diminutive stature and some impairment of daily functions. Plaintiff testified in her deposition that her condition did not prevent her

from working or performing the job duties of the MCA position; and admitted, in her responses to Sears' requests for admission, that she could perform the essential functions of her position at Sears without accommodation.

As an MCA, plaintiff was expected to facilitate the efficient flow of merchandise to the sales floor, and to ensure that the sales floor was "Ready all Day" (clean and organized for customers). One of her primary tasks was to timely place "go-backs" and new merchandise in the correct location on the sales floor. However, she testified, she struggled with this task. She recalled a former supervisor telling her to be careful about putting the "go-backs" away "in the right spot," and agreed that she "pretty much" had a problem with performing this task correctly.

During the period from 2002 to 2005, plaintiff received four written warnings ("Documentation of Performance Issues") from both her supervisors, as well as a written "Coaching Report," because she either neglected to perform the tasks required of MCAs, or took too long to restock the merchandise, or performed the tasks incorrectly. Her reviews reflected that she created more work for the other MCAs, who had to correct her mistakes. For this reason, both supervisors kept her on an improvement plan to track any progress in her performance.

Because of these performance issues, plaintiff received a 2.0 performance rating (based on a five-point scale, where 2.0 means "some expectations met"). In addition to the improvement plans, plaintiff also received further coaching, training, and re-training on the essential functions of her job by her managers.

Jayati Dasgupta became plaintiff's supervisor in April 2004. Plaintiff testified that Ms. Dasgupta frequently coached her on basic MCA tasks, such as matching merchandise colors and sizes according to the standard color chart. In the complaint, plaintiff alleges that Ms. Dasgupta found fault with virtually everything plaintiff did, and that in October 2005, plaintiff requested a transfer to another department. Plaintiff contends that this request was refused.

On November 30, 2005, Ms. Dasgupta was coaching plaintiff on the tasks of putting

"go-back" merchandise properly on the racks, and cleaning the fitting rooms in a timely manner. Plaintiff testified that Ms. Dasgupta was "on my back the whole time." Plaintiff became upset, threw a phone she was holding at a basket near Ms. Dasgupta's feet, announced she was leaving, and walked off the job before the conclusion of her shift.

Upon arriving at the store for her next scheduled shift a couple of days later, plaintiff was told by a co-worker that the manager had advised the co-worker not to expect plaintiff for the shift. Plaintiff did not clock in for the shift, and did not speak to any manager or anyone in Human Resources before leaving again.

On December 5, 2005, plaintiff returned to the store with her mother to meet with the Store General Manager, Valerie Funai. Ms. Funai informed plaintiff that because she had walked off the job in the middle of one shift, and had failed to report to work for the next scheduled shift, Sears considered that plaintiff had abandoned her job. Ms. Funai further informed plaintiff that her employment was terminated, and she could not return to her position. According to Ms. Funai, plaintiff admitted during this meeting that she had left her shift early on November 30, 2005, without approval, and stated, with regard to her termination, that she had "no one to blame but [her]self."

Plaintiff subsequently complained in writing to Sears, asserting that she had been harassed by Ms. Dasgupta. She alleges that Sears failed to conduct an impartial investigation into her claims. On June 14, 2006, plaintiff filed an administrative complaint with the California Department of Fair Employment and Housing ("DFEH"), alleging that she had been harassed on the basis of her disability (Turner Syndrome) by Ms. Dasgupta between April 2004 and November 30, 2005, and that she had been constructively discharged (forced to quit) on November 30, 2005. DFEH issued a right-to-sue letter on June 8, 2007.

Plaintiff filed the present action in the Superior Court of California, County of San Mateo, on June 4, 2008. On July 3, 2008, Sears filed a notice of removal, alleging diversity jurisdiction. Plaintiff alleges a single cause of action, for disability discrimination, which appears to include allegations of harassment and failure to investigate and prevent

3

1  discrimination and harassment, in violation of the Fair Employment and Housing Act
2  ("FEHA"), Cal. Gov't Code § 12900, et seq.  Plaintiff seeks compensatory and punitive
3  damages.  Sears now seeks summary judgment on this claim.

4  Pursuant to the court's Case Management and Pretrial Order of November 10, 2008,
5  Sears filed the present motion and noticed it for hearing on December 16, 2009, a date 120
6  days before the scheduled trial date.  Pursuant to Civil Local Rule 7-3, the opposition was
7  due by November 25, 2009 and the reply was due by December 2, 2009.  No opposition or
8  reply was filed, nor was any notice of continuance before the due date for the opposition
9  filed, as permitted by L.R. 7-7(a)(2) (nor, indeed, any untimely request for a continuance).
10 Accordingly, on December 8, 2009, the court vacated the December 16, 2009 hearing date,
11 and advised the parties that it would consider Sears' motion on the papers.

12 On December 14, 2009, plaintiff's counsel filed a document entitled "Notice of
13 Failure of Service of Defendant's Motion for Summary Judgment," in which he stated that
14 he "did not receive service" of defendant's e-filed motion, "apparently because he was
15 forced, by a computer virus, to replace/upgrade his email server software at about the time
16 such PACER email notification would have been received;" and that he learned that the
17 motion had been filed only when he was "reviewing the PACER docket on-line in
18 connection with another, unrelated scheduling matter" on November 30, 2009.  He stated
19 that he and counsel for Sears had "agreed . . . to continue the hearing date" on the motion
20 to mid-January 2010, "to permit Plaintiff to file an Opposition to said Motion," but noted that
21 the court had already vacated the hearing date and taken the motion under submission,
22 based on the lack of any opposition by the plaintiff.

23 On December 15, 2009, the court issued an order acknowledging receipt of the
24 December 14, 2009 document, and noting that it appeared that plaintiff was seeking leave
25 to file a late opposition to Sears' motion, and was also seeking a modification of the Case
26 Management and Pretrial Order.  The court advised plaintiff that "[t]he court will not
27 consider any request from any party that is not presented in the form required under the
28 Federal Rules of Civil Procedure and the Civil Local Rules of this court, including but not

4

1 limited to Federal Rules of Civil Procedure 7 and 16, and Civil Local Rules 7 and 16.[1]
2 Notwithstanding this instruction, plaintiff filed no request for a continuance in conformance
3 with the rules.

**DISCUSSION**

A.   Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion.  See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

The mere failure to respond to the motion does not provide the court with authority to grant the motion.  See Evans v. Independent Order of Foresters, 141 F.3d 931, 932 (9th

---

[1] Given that the parties were advised in the pretrial order that the court hears all dispositive motions 120 days before trial, a stipulation to continue the motion would have been in violation of the court's order.

5

1 Cir. 1998); Marshall v. Gates, 44 F.3d 722, 725 (9th Cir. 1995).  Under Federal Rule of Civil
2 Procedure 56, a moving party is entitled to summary judgment only upon a showing that
3 there are no genuine issues of material fact that require a trial.  In re Rogstad, 126 F.3d
4 1224, 1227 (9th Cir. 1997) (citing Henry v. Gill Indus., 983 F.2d 943, 950 (9th Cir. 1993).

If a motion for summary judgment is unopposed, the court is obligated to "carefully evaluate[ ]" whether there exist genuine issues of material fact that would preclude summary judgment.  Cristobal v. Siegel, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994). Nevertheless, the court is not required to scour a moving defendant's evidence in search of a material issue of fact to support the allegations in the plaintiff's complaint.  See Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).

B.     Defendant's Motion

In support of its motion, Sears makes four main arguments – that plaintiff's claim for disability discrimination fails because she cannot meet her burden of proving that Sears discriminated against her because of her disability; that any claim of harassment fails because the undisputed facts do not support such a claim; that absent a finding of discrimination, there can be no claim of failure to investigate or stop discrimination or harassment; and that plaintiff has not established an entitlement to punitive damages.

1.     Discrimination claim

Sears argues that summary judgment must be granted on the discrimination claim because plaintiff fails show that Sears discriminated against her because of her disability. The court finds that the motion must be GRANTED.

A plaintiff can prove a discrimination claim by either direct or indirect (circumstantial) evidence.  In cases such as this one, where direct evidence of discrimination is lacking, the court analyzes the FEHA discrimination claim under the three-step, burden-shifting test set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973. See Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 352 (2000).

The plaintiff must first establish a prima facie case of discrimination on the basis of disability, by providing evidence that she suffered from a disability, that she was otherwise

6

qualified to do her job, and that she suffered an adverse employment action because of her disability. See Deschene v. Pinole Point Steel Co., 76 Cal. App. 4th 33, 44 (1999). If the plaintiff succeeds in establishing a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions; and the plaintiff is then required to put forth evidence showing that the defendant's articulated reason was a pretext for discrimination. See Guz, 24 Cal. 4th at 354-56.

Here, the court finds that plaintiff cannot establish a prima facie case because she has not shown that she suffered an adverse employment action because of her disability. The mere existence of a disability alone does not give rise to a disability discrimination claim under FEHA. See Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 260 (2000).

Rather, as part of her burden of showing that the employer harbored a discriminatory animus because of her disability, a plaintiff must demonstrate that the employer knew, or should have known, of her disability. See Avila v. Continental Airlines, Inc., 165 Cal. App. 4th 1237, 1246-47 (2008). That is, an adverse employment decision cannot be made "because of" a disability if the disability is not known to the employer. Brundage v. Hahn, 57 Cal. App. 4th 228, 236-37 (1997).

Here, plaintiff testified in her deposition that she thought Ms. Dasgupta didn't like her because she had Turner Syndrome, and because she "was different than most people." However, there is no evidence that anyone at the San Mateo Sears store was aware of plaintiff's disability.

Plaintiff testified in her deposition that she told no one at the store about her disability, that she never provided any written documentation of her disability to Sears, and that she never requested any accommodation for her disability or indicated to anyone at Sears that she could not perform job tasks quickly because of her disability. She also testified that Ms. Dasgupta never made any comments about her physical stature or mental limitations, or otherwise suggested any awareness of any disability that plaintiff might have had. Thus, because there is no evidence to suggest that anyone at Sears was aware, or should have been aware, that plaintiff had Turner Syndrome, plaintiff cannot establish that

she was discriminated against because of her disability.

In addition, plaintiff cannot establish that she suffered an adverse action.  It is not clear from the complaint exactly what type of adverse action plaintiff is asserting as part of her discrimination claim.  She alleges only that she was constructively discharged.  Constructive discharge claims are evaluated under an objective standard – that is, whether a reasonable person in the plaintiff's position would have felt compelled to resign.  Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1248 (1994).

Here, there is no evidence that any comments by Ms. Dasgupta could have caused a "competent, diligent, and reasonable employee" to quit her employment, such that plaintiff's walking off the job in the middle of her shift can be legally regarded as a constructive termination.  See id. at 1244-45.  Plaintiff alleged in the complaint that Ms. Dasgupta created "intolerable working conditions" by making comments such as "you're not working fast enough," or "if you don't shape up in 30 days, you're gone."  Plaintiff also testified in her deposition that Ms. Dasgupta clapped her hands on a few occasions when plaintiff was not working fast enough, and told her a few times in front of other employees that she had put merchandise away incorrectly.

In view of the evidence showing that plaintiff's performance was below par, and that she had been placed on a performance plan, the fact that her supervisor told her to hurry up, and criticized her performance in front of other employees was not sufficient to create the type of "intolerable working conditions" required to establish a claim of constructive discharge.

Moreover, plaintiff testified in her deposition that after her argument with Ms. Dasgupta on November 30, 2005, she intended to return to work at her next scheduled shift.  She also met with Ms. Funai several days later, and asked Ms. Funai whether she could return to work.  Plaintiff's attempts to return to work refute her claims that her working conditions were so intolerable that her job abandonment amounted to a constructive discharge.

Accordingly, plaintiff can neither make out a prima facie case of disability, nor satisfy

her ultimate burden of proving that Sears intentionally discriminated against her because of her disability.

  2.  Harassment claim

  Sears argues that summary judgment must be granted as to the harassment claim because it is not pled as a separate cause of action in the complaint, and also because there is no evidence to support such a claim. The court reads the complaint a bit more expansively than Sears does, and finds that plaintiff has stated a claim for harassment. The court also finds, however, that summary judgment must be GRANTED on this claim.

  FEHA makes it unlawful for an employer or its employees to harass an employee because of, among other things, "physical disability" or "medical condition." See Cal. Gov't Code § 12940(j)(1). California courts have been guided in their interpretations of FEHA by the federal court decisions interpreting Title VII. Etter v. Veriflo Corp., 67 Cal. App. 4th 457, 464-65 (1998). The federal courts have recognized that "not all harassing workplace conduct is sufficient to state a claim of discrimination under Title VII," and that the mere utterance of an epithet that engenders offensive feelings in an employee will not affect the conditions of employment to a sufficiently significant degree to constitute harassment. Id.; see also Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) ("[d]iscourtesy or rudeness should not be confused with . . . harassment").

  To establish a prima facie case of hostile work environment on the basis of a disability, the plaintiff must show that she was subjected to verbal or physical conduct because of her disability, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). Although Meritor was a sexual harassment case, California courts apply the same standard in analyzing disability harassment claims. See Muller v. Automobile Club of So. Cal., 61 Cal. App. 4th 431, 446 (1998).

  The environment must be both objectively and subjectively offensive. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). In determining what constitutes "sufficiently

9

pervasive" harassment, the courts have held that acts of harassment cannot be occasional, isolated, sporadic, or trivial; rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature. Muller, 61 Cal. App. 4th at 446. Courts consider factors such as

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that she was actually offended.

Beyda v. City of Los Angeles, 65 Cal. App. 4th 511, 517 (1998) (citations and quotations omitted).

Here, there is no evidence that plaintiff, or anyone acting on her behalf, ever informed Sears of plaintiff's disability or sought any type of accommodation. Moreover, plaintiff testified that she could not recall Ms. Dasgupta ever making any comments about her physical or mental limitations that were unrelated to the performance of her job duties. Thus, plaintiff cannot show that Sears harassed her because of her disability.

In her deposition, plaintiff conceded that all the conduct to which she testified – the clapping of hands in an attempt to get plaintiff to hurry, the comments in the presence of other employees to the effect that plaintiff was not working quickly enough and wasn't putting merchandise away correctly – were all related to her job performance. Thus, the conduct can be considered as within Ms. Dasgupta's duties as plaintiff's immediate supervisor.

These actions do not amount to harassment because they do not constitute the type of conduct that is outside the proper scope of duties necessary to conduct business and manage personnel. See Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55, 63 (1996) (harassment consists of a type of conduct not necessary for performance of a supervisory job). The fact that Ms. Dasgupta may have "yelled" at plaintiff, as plaintiff claimed in her deposition, is not sufficient to establish the existence of an objectively abusive work environment.

3. Claim of failure to investigate or prevent discrimination and harassment

Because plaintiff lacks a viable claim of either discrimination or harassment, the court finds that summary judgment must be GRANTED as to the claim of failure to investigate or prevent discrimination or harassment. There can be no claim for failure to prevent discrimination or harassment under FEHA unless the plaintiff first establishes an underlying, valid claim for discrimination or harassment. Trujillo v. North Co. Transit Dist., 63 Cal. App. 4th 280, 288-89 (1998). "[T]here is no logic that says an employee who has not been discriminated against can sue an employer for not having a policy to prevent discrimination when no discrimination occurred." Id. at 289.

## CONCLUSION

In accordance with the foregoing, the court finds that Sears' motion for summary judgment must be GRANTED. The trial and pretrial dates are VACATED.

**IT IS SO ORDERED.**

Dated: February 16, 2010

PHYLLIS J. HAMILTON
United States District Judge